Peelle, Ch. J.,
delivered the opinion of the court:
The claimant herein seeks recovery for certain vegetables of a perishable character shipped from Australia to Manila for the use of the Army pursuant to a contract entered into between it and the United States through John C. Bray, consul general at Melbourne, Australia, August 16, 1898, which contract, as subsequently modified, was ratified by the Commissary General, United States Army, as set forth in Finding IX. The negotiations for the purchase of the supplies began August 9, 1898, by the Commissary General in *391 quiring of Mr. Bray at what prices he could obtain steamship cargo of refrigerated beef and vegetables delivered without delay at Manila, the contractors to be responsible for the condition of the same up to the moment of daily delivery to the troops. Three days later he requested Mr. Bray by cablegram to advise the department by noon the next day about said cargo. Immediately upon receipt of the latter cablegram Mr. Bray made diligent inquiry of persons interested to ascertain the prices of such cargo. The prices given were upon the basis that the contractor should be responsible for the condition of the supplies until the “ moment of daily delivery to troops.” Mr. Bray regarded the prices as too high and requested the claimant to reduce the same, which it refused to do, but informed him that if the Government would regard all vegetables arriving at Manila in good condition, as at the risk of the Government, it would reduce the prices, as set forth in the findings, which amounted in the aggregate to a difference in the price of meat of about $50,000, or a sum about equal to the total cost of the vegetables purchased. Thereupon the consul general asked the claimant to put its proposition in writing, which it did on August 13, 1898, as set forth in Finding IY, by the terms of which the vegetables arriving in good condition were to be accepted by the Government upon arrival, the meat to be at the risk of the claimant until daily issued to the troops, to which the consul general, on the same day, advised the claimant that he liad cabled his Government, and if its proposition was accepted the stipulation would be considered a part of the contract. August 15, 1898, the claimant was informed by the consul general that its offer was accepted, and urged it to expedite the necessary contract, which it did, and submitted the draft thereof, without paragraph 6 and the cablegram therein referred to,, to the consul general, who, after inserting paragraph 6, signed the same August 16, 1898, as did the claimant in the form set forth in Finding Y, but upon condition that its proposition of August 13, 1898, and his reply thereto of August 14 and 15, 1898, as set forth in Finding IY, were made a part of the contract, to which the consul general acceded, and on August 18, 1898, he addressed the claimant a letter in which he stated that “ The conditions and *392 stipulations contained in your letter of the- 13th instant are hereby made a part of the contract executed and dated August 16, 1898.”
The matter of making the purchase was intrusted by the Commissary General to Mr. Bray, stating the conditions upon which he was to act, of which the claimant was advised, but it in effect declined to contract upon the conditions stated, by giving prices which Mr. Bray regarded too high; and thereupon the claimant, at his request, made bids upon the condition that all vegetables in good condition should upon arrival at Manila be regarded as a delivery to the United States, to which the consul general acceded, and the contracts as finally modified embodied the offer of the claimant and Mr. Bray’s acceptance, which, being subsequently ratified by the' Commissary General, became the contract between the parties.
If we are correct in this, then it follows that the vegetables being in good condition when they arrived at Manila must be regarded as having been accepted by the United States, and whatever loss followed must be borne by the United States and not by the claimant.
The vegetables arrived at Manila in good condition (Finding VII) September 16,1898, but the Government delayed in receiving them on the ground that, notwithstanding the prior purchase of said vegetables and within 4 days of the arrival of the vessel therewith, the chief commissary caused to be purchased from another vessel a supply of like vegetables sufficient for 10 days or more. Mr. Bray, being appealed to therefor, cabled the Commissary General, September 21,1898, that in order to secure the vegetables it was necessary to promise their acceptance upon arrival at Manila. September 27, 1898, the Commissary General, though he regarded the contract agreeing to accept the vegetables upon arrival as improper, nevertheless cabled the chief commissary at Manila “We must abide by it,” and on the same day he cabled Consul General Bray that the contract had been received and that he had “ wired Manila to accept vegetables ” which was done, as shown by cablegram set forth in Finding IX, by the chief commissary to the Commissary General the next day. This the Commissary General had authority to *393 do in view of the emergency existing at the time for supplies. Therefore the vegetables upon arrival at Manila in good condition must be regarded as accepted by the Government, thereby excusing the claimant from the exercise of its option of otherwise disposing of them.
As to the price of the vegetables there is no controversy, as that was fixed in the contract; nor is there any controversy as to the quantity of vegetables so received in good condition for which the Government refused to pay. Therefore without further discussion of the case the court concludes that the claimant is entitled to recover the amount set forth in Finding XII, $26,431.92.